

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

| | | |
|---|---|---|
| *CRAIG CARPENITO* | CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE | 856.757.5026 |
| *United States Attorney* | *401 Market Street, 4th Floor* | *Fax: 856.968.4917* |
| | *Post Office Box 2098* | |
| | *Camden New Jersey 08101-2098* | |

December 6, 2019

The Honorable Robert B. Kugler, U.S.D.J.
Mitchell H. Cohen Federal Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey 08102

  Re: *United States v. William Hickman, et al.*, Crim. No. 19-191 (RBK)
     *United States v. Michael Pepper*, Crim. No. 17-329 (RBK)

Dear Judge Kugler:

  The Government submits this letter brief in response to defendants William and Sara Hickman's Motion to Obtain Certain Relief from the Post-Indictment Restraining Order. The Hickmans ask to be relieved of all responsibilities to maintain three properties purchased with the Hickmans' money, funds that the Hickmans obtained by fraud. They seek to use their own acts of money laundering and concealment of fraudulent proceeds – including William Hickman's deliberate choice to keep their names off the papers for properties he spent over $850,000 to buy and improve – to avoid the responsibility for maintaining these assets. Instead of rewarding their acts of concealment, the Court should deny their motion and order what all interested parties want: that the three properties be sold, with the proceeds held pending resolution of these cases.

  The relevant facts appear to be largely undisputed. William Hickman and his co-conspirator Michael Pepper (who pled guilty on August 18, 2017) had an agreement to buy three properties in Linwood, New Jersey: 5 East Monroe Avenue, 11 West Edgewood Avenue, and 1117-1119 Shore Road (collectively, the "Subject Properties"). *See* Exhibit A (Memorandum of Interview of Michael Pepper). Using money from a Boardwalk Medical account jointly controlled by William and Sara Hickman, William Hickman provided the funds to purchase the Subject Properties, but they were put in the name of Pepper's company, MJP Construction, Inc. ("MJP"). *See* Exh. A ¶ 1; Exhibit B (checks used to fund purchases). More specifically:

- 5 East Monroe's $125,000 purchase price and related expenses were funded by William Hickman with a $128,032.92 bank check purchased with funds from the Boardwalk Medical account. Exh. A ¶ 3; Exh. B. This transaction is charged as an act of money laundering in count 44 of the Indictment. William Hickman then took $600,000 from the Boardwalk Medical account, purchased a bank check to MJP, and gave Pepper the check to improve the property. Exh. A ¶ 4; Exh. B. The $600,000 transaction is charged as an act of money laundering in count 47 of the Indictment.

1

- 11 West Edgewood's $75,000 purchase price and related expenses were funded by William Hickman with a $77,428.24 bank check purchased with funds from the Boardwalk Medical account. Exh. A ¶ 9; Exh. B. This transaction is charged as an act of money laundering in count 45 of the Indictment.
- 1117-1119 Shore Road's $75,000 purchase price and related expenses were funded by William Hickman with a $76,653.23 bank check purchased with funds from the Boardwalk Medical Account. Exh. A ¶ 11; Exh. B. This transaction is charged as an act of money laundering in count 46 of the Indictment.

In an apparent effort to conceal the Hickmans' interest in these properties, their names are not listed on the deeds, and there is not even a written agreement between Pepper and the Hickmans. According to Pepper, upon the sale of each Subject Property, the parties agreed that William Hickman would receive back his principal investment plus 5% interest and that profits would be split, with 60% going to Pepper and 40% going to William Hickman. Exh. A ¶ 2. Unless William Hickman gave Pepper over $850,000 of the Hickmans' money with no strings attached, Pepper's description of the agreement is credible. The Hickmans have an ownership interest in the Subject Properties.

The Indictment gave notice of the Government's intent to forfeit, upon conviction, the Hickmans' ownership interests in various assets and specifically named the Subject Properties. The Court entered a Post-Indictment Restraining Order Pursuant to 21 U.S.C. § 853 ordering the Hickmans, Michael Pepper, MJP and "all . . . persons . . . who have an interest in or control over the" Subject Properties to not sell or diminish the value of the properties and "[to] maintain the present condition of the [Subject Properties], including timely payment of all mortgage payments, and insurance, utilities, taxes, and assessments." Exh. A to Hickmans' Motion ¶¶ 2-3.

The Hickmans seek relief from the maintenance requirements because they kept their names off the deeds and concealed their interest in the Subject Properties. The Court, however, should look at the reality of the situation rather than the fiction William Hickman created. Using the proceeds of the Hickmans' massive fraud scheme, William Hickman jointly invested in the properties with Pepper. Any profits from the properties were to be split between the parties, with William Hickman obtaining 40% of the profits, the return of the original investment, and 5% interest on the original investment. Given that the parties jointly shared the profits, they would jointly share the expenses, as any expenses paid on the properties would be deducted to determine the profits. Indeed, according to Pepper's counsel, Pepper and William Hickman had an oral agreement whereby William Hickman agreed to pay the property taxes associated with the Subject Properties. *See* Exhibit G to the Hickmans' Motion. The amount is not onerous; according to Pepper's counsel, the total unpaid taxes for all three properties is less than $10,000.

Moreover, aside from any actual or implied agreement to split the expenses, the Hickmans certainly "have an interest in" the Subject Properties, which is sufficient under the Restraining Order to obligate them to maintain the properties, including the payment of expenses. The Hickmans cannot escape the requirement to maintain the properties purchased with proceeds of their fraud.[1]

---

[1] The Hickmans' motion claims that complying with the Restraining Order would risk charges of witness tampering. Obviously, this Court did not order the Hickmans to engage in witness tampering, and honoring their Court-ordered obligations through counsel would not constitute witness tampering or a violation of their release conditions.

After receiving the Hickmans' motion, the Government contacted counsel for the Hickmans and for Pepper and attempted to resolve this dispute without the need for Court action. All counsel support selling the Subject Properties. The sooner the properties are sold, the sooner both the Hickmans and Pepper will be relieved of the obligations and responsibilities associated with the Subject Properties. The Government has prepared the enclosed Proposed Order to effectuate the sales. Exhibit C. Under this proposed resolution, Pepper, through MJP, would engage a realtor to market and offer the Subject Properties for sale to the public in a commercially feasible manner, and each of the properties would be sold by MJP for fair market value in an arm's length, interlocutory sale under terms and conditions of a written contract approved by the Government. *See* Exh. C, ¶¶ 1-4. Both the Hickmans and Pepper would continue to be jointly responsible for, among other things, maintenance of the Subject Properties, maintaining insurance policies for the properties, and payments of obligations and taxes on the properties. *See id*. ¶¶ 5-8. Further, given that the Subject Properties are subject to forfeiture because they were purchased with criminal proceeds, the net proceeds of any sale would held by the U.S. Department of Treasury as property subject to forfeiture in place of the sold properties. *See id*. ¶¶ 12-14.

Finally, Michael Pepper should participate in any resolution of this issue, as the Hickmans' proposed resolution would shift responsibilities for the Subject Properties, currently shared by Court Order, entirely to Pepper. For that reason, the Government sent Pepper's counsel the Hickman's motion and is serving Pepper's counsel with this letter brief. The Government submits that counsel for Pepper should be given notice and the opportunity to be heard on this issue.

For the reasons set forth above, the Government respectfully requests that the Court deny the Hickmans' motion and enter the enclosed Proposed Order resolving this matter. Should the Court have any questions, the Government will be prepared to address any such inquiries at the upcoming status conference on December 10, 2019, or at any other time the Court prefers.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney

*/s/ **R. David Walk, Jr.***

By:    R. DAVID WALK, JR.
       CHRISTINA O. HUD
       BARBARA A. WARD
       Assistant United States Attorneys

cc:    Samuel Moulthrop, Esq., Counsel for William Hickman (*via email*)
      Ryan Magee, Esq., Counsel for William Hickman (*via email*)
      Lee Vartan, Esq., Counsel for Sara Hickman (*via email*)
      Joseph Levin, Esq., Counsel for Michael Pepper (*via email*)

# EXHIBIT A



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | ▓▓▓▓▓▓ | **Location:** | **FBI Office** |
| **Investigation Name:** | WILLIAM HICKMAN | | **Northfield, New Jersey** |
| **Date:** | February 14, 2019 | | |
| **Time:** | Approx.:10:57 a.m. – 11:20 a.m. | | |

**Participant(s):**   Michael Pepper
Brandon Galloway, Special Agent
Antonio Montanez, Special Agent

On the above date, this agent interviewed Michael Pepper (herein identified as "Pepper"). Pepper has been interviewed several times in the past. The purpose of the interview was to provide information related to properties purchased by Pepper and WILLIAM HICKMAN ("HICKMAN") Pepper provided the following information:

1. Pepper and HICKMAN invested in several real estate properties together. Pepper purchased these properties through MJP Construction.

Concerning 5 East Monroe Ave, Linwood, New Jersey, Pepper stated the following:

2. The original agreement Pepper had with HICKMAN was that HICKMAN would receive five percent interest on the money he invested. The profit on the sale of 5 East Monroe would be split 60 / 40 in Pepper's favor. Pepper stated that in a recent conversation with HICKMAN, HICKMAN told Pepper in substance and in part to not worry about the original agreement. Pepper believed that due to the investigation, HICKMAN was anxious to sell the property and move on to the next.

3. HICKMAN provided the money for the purchase of the 5 East Monroe. Pepper believed it cost $125,000 plus closing costs. Pepper confirmed that HICKMAN provided the money for cashier's check no. 1000184622 in the amount of $128,032.92 that was used to purchase the property.

4. HICKMAN invested $600,000 for the construction of the 5 East Monroe. Pepper deposited the $600,000 into a MJP Construction bank account at Bank of America. In addition, Pepper believed that HICKMAN invested an additional $10,000 - $11,000 in the property.

5. Pepper stated that originally Pepper and HICKMAN were both supposed to be involved in the construction of 5 East Monroe. However, due the investigation, HICKMAN did not have the time to be involved in the construction and Pepper

built the house on his own.

6. Pepper believed he invested approximately $80,000 in his own money in 5 East Monroe. Pepper used a pension loan so he could finish the construction property.

7. The listing agent for 5 East Monroe is Rachel Bachman ████████████ from Remax. The current listing price is $879,000.

8. Pepper stated that he had been paying the taxes for 5 East Monroe. As of February 1, 2019, the taxes are not current. Pepper stated that he recently texted HICKMAN and told him he did not have the money for the taxes. HICKMAN did not respond.

Concerning 11 W Edgewood Ave, Linwood, New Jersey, Pepper stated the following:

9. HICKMAN provided the money for the purchase of the 11 W Edgewood Ave. Pepper believed it cost $75,000 plus closing costs. Pepper confirmed that HICKMAN provided the money for cashier's check no. 1000184620 in the amount of $77,428.24 that was used to purchase the property.

10. The listing agent for 11 W Edgewood Ave is Tom Durkin ████████████ from Remax. The current listing price is $78,500.

Concerning 1117-1119 Shore Road , Linwood, New Jersey, Pepper stated the following:

11. HICKMAN provided the money for the purchase of the 1117-1119 Shore Road. Pepper believed it cost $75,000 plus closing costs. Pepper confirmed that HICKMAN provided the money for cashier's check no. 1000184610 in the amount of $76,653.23 that was used to purchase the property.

12. The listing agent for 1117-1119 Shore Road is Tom Durkin ████████████ from Remax. The current listing price is $82,500.

13. Pepper stated that he and HICKMAN also purchased 7 North New Haven. However this property was sold because they were unable to get the proper zoning to make the property profitable.

14. Pepper asked this agent if the properties discussed during the interview were going to be seized. This agent explained that he was unable to go into any details with Pepper but that it was possible.

15. Pepper stated that his number one goal right now is paying back what he owes the government as a result of his conduct. He stated that he wants to move on with his life.

16. Pepper asked this agent what he should due about his past due tax returns.

This agent told Pepper that he should consult with his attorney and accountant to see what is best for him.

I prepared this memorandum after refreshing my memory from notes made during and immediately after the interview with Michael Pepper.

Brandon Galloway
Special Agent

# EXHIBIT B

**FORFEITABLE ASSETS – DOCUMENTATION**
March 14, 2019



$282,114.39 10/06/2016



$282.114.39 10/06/2016



$128,032.92 10/06/2016



$128,032.92 10/06/2016

**FORFEITABLE ASSETS – DOCUMENTATION**
March 14, 2019



$600,000.00 02/01/2017

$600,000.00 02/01/2017

$600,000.00 02/01/2017

$600,000.00 02/01/2017

**FORFEITABLE ASSETS – DOCUMENTATION**
March 14, 2019
11 W Edgewood Ave, Linwood, New Jersey 08221



$282,114.39  10/06/2016

$282.114.39  10/06/2016

$77,428.24  10/06/2016

$77,428.24  10/06/2016

**FORFEITABLE ASSETS – DOCUMENTATION**
March 14, 2019
1117-1119 Shore Road, Linwood, New Jersey 08221



$282,114.39 10/06/2016



$282.114.39 10/06/2016

**FORFEITABLE ASSETS – DOCUMENTATION**
March 14, 2019



$76,653.23 10/06/2016

$76,653.23 10/06/2016

# EXHIBIT C

2016R00427
RDW/COH/BAW/jw/fk

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Robert B. Kugler, U.S.D.J. |
| v. | : | Crim. No. 19-191 (RBK) |
| WILLIAM HICKMAN and SARA HICKMAN, | : | |
| Defendants. | : | |
| --------------------------------------------- | : | |
| UNITED STATES OF AMERICA | : | Crim. No. 17-329 (RBK) |
| v. | : | STIPULATION AND ORDER OF INTERLOCUTORY SALE |
| MICHAEL PEPPER, | : | |
| Defendant. | : | |
| --------------------------------------------- | : | |

WHEREAS, on March 13, 2019, a federal grand jury in the District of New Jersey returned an Indictment (the "Indictment") charging William Hickman, Sara Hickman, and others with health care fraud, wire fraud, money laundering conspiracy, and various substantive offenses in connection with a scheme to defraud public health insurance programs by submitting false claims for medically unnecessary prescription compounded medications;

WHEREAS, the Indictment contained forfeiture allegations that gave notice of the United States' intent to forfeit, upon conviction, all right, title, and interest of William Hickman and Sara Hickman in various properties;

WHEREAS, on or about March 13, 2019, the Court entered a Post-Indictment Restraining Order restraining William Hickman, Sara Hickman, and others, including those with knowledge of the Restraining Order, from transferring or encumbering the property listed in the Indictment and from taking any action that would diminish the value of the property (the "Restraining Order");

WHEREAS, the real properties named in the Restraining Order included the real property and appurtenances known as:

(a)   The real property and appurtenances known as 5 East Monroe Avenue, Linwood, Atlantic County, New Jersey, 08221, held in the name of MJP Construction, Block 110, Lot 3.02, APN 14-00110-0000-00003-02;

(b)   The real property and appurtenances known as 11 West Edgewood Avenue, Linwood, Atlantic County, New Jersey, 08221, held in the name of MJP Construction, Block 73, Lot 21, APN 14-00073-0000-00021; and

(c)   1117-1119 Shore Road, Linwood, Atlantic County, New Jersey, 08221, held in the name of MJP Construction, Block 73, Lot 20, APN 14-00073-0000-00020;

(hereinafter referred to collectively as the "Subject Properties");

WHEREAS, in April 2019, the United States filed Notices of Pendency with respect to the Subject Properties, to preserve its interest therein and to provide notice to prospective purchasers of the pending criminal forfeiture action involving the Subject Properties;

-2-

WHEREAS, William Hickman, Sara Hickman, Michael Pepper, and MJP Construction, Inc. ("MJP") each represent that, to the best of his/her/its knowledge and belief, (i) there are no mortgages, liens or other encumbrances on the Subject Properties, and (ii) no other party other than William Hickman, Sara Hickman, Michael Pepper, and MJP has a potential legal interest in the Subject Properties;

WHEREAS, the Subject Properties are subject to property taxes, maintenance, and other expenses on an ongoing basis;

WHEREAS, the interlocutory sale of depreciable forfeitable property on the consent of the parties, and with the Court's authorization, is authorized by 21 U.S.C. § 853(e)(1) and Fed. R. Crim. P. 32.2(b)(7) (incorporating the provisions of Rule G(7)(b)(i)-(iv) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"));

WHEREAS, the United States Attorney's Office for the District of New Jersey (the "Office"), William Hickman, Sara Hickman, Michael Pepper, and MJP (hereinafter referred to collectively as the "Parties") each agree that the Subject Properties should be sold to preserve their value pending a final adjudication on the merits;

WHEREAS, based on the circumstances of this case, the Parties further agree that the most efficient, fair, and cost-effective manner of selling the Subject Properties at this juncture is for the title holder, MJP, by its authorized representative, defendant Michael Pepper, to sell the Subject Properties on the terms and conditions set forth below.

-3-

Good and sufficient cause having been shown, it is hereby STIPULATED, ORDERED, AND DECREED THAT:

1.      MJP shall engage a realtor to market and offer the Subject Properties for sale to the public in a commercially feasible manner.  The realtor shall not be related to any Party by blood, marriage, or other association, or bound to a Party by affection, influence, common interests, and/or obligation.

2.      Each of the Subject Properties shall be sold by MJP for fair market value in an arm's length, interlocutory sale under terms and conditions of a written contract approved in all particulars by the Office or its designee.

3.      The Office may, in its sole discretion, reject any offer to purchase the Subject Properties where it is determined that the offer is being made by or on behalf of a person who was involved in, contributed to, participated in, benefitted from, or acted in a willfully blind manner toward the activity alleged in the Indictment.

4.      MJP shall obtain the prior approval of the Office of all particulars of the contract and the sale, including the Closing Statement, and shall provide all other documentation requested by the Office in connection with any sale of the Subject Properties.

5.      The parties agree to execute promptly any documents that as necessary to complete the interlocutory sale of the Subject Properties.

6.      William Hickman, Sarah Hickman, Michael Pepper, and MJP will maintain the Subject Properties in order to preserve their current market value, normal wear and tear excepted.  The term "maintain" shall include, but not be

limited to, keeping the Subject Properties free of hazard and structural defects; keeping all heating, air conditioning, plumbing, electrical, gas, oil, or other power facilities in good working condition and repair; keeping the Subject Properties clean and performing necessary sanitation and waste removal; and keeping the Subject Properties in good condition by providing any necessary items of routine maintenance.

7.      William Hickman, Sarah Hickman, Michael Pepper, and MJP will (i) maintain insurance policies on the Subject Properties, including a standard homeowners' policy covering replacement cost and policies covering liability to persons injured on the Subject Properties; (ii) provide certificates of insurance to the Office; and (iii) notify the insurance companies that the Office is a party to be notified in the event the policy is canceled and/or modified.

8.      William Hickman, Sarah Hickman, Michael Pepper, and MJP will make timely payments to the appropriate institutions concerning the Subject Properties which are a current and continuous obligation including but not limited to homeowners association charges and assessments, mortgage payments, home equity loan payments, utility payments, property tax payments, any levies by municipal authorities and such other obligations otherwise necessary until the date of sale, and if any such payments are delinquent to immediately cure such delinquency.  William Hickman, Sarah Hickman, Michael Pepper, and MJP shall provide the Office with a written statement of all obligations covered by this paragraph and shall provide the

Office with satisfactory proof that those obligations are being met on a timely basis.

9.      William Hickman, Sarah Hickman, Michael Pepper, and MJP will notify and obtain the permission of the Office before entering into a rental agreement for any of the Subject Properties.

10.      MJP shall accommodate any reasonable requests by the Office and its agents and employees for physical access to the Subject Properties for purposes of inspection and financial and other information regarding the Subject Properties pending their sale.  MJP shall fully cooperate with any persons and entities designated by the Office to inspect or examine the Subject Properties, including, but not limited to, appraisers and environmental inspectors.  These inspections or examinations will also be arranged with reasonable advance notice to counsel for defendant Michael Pepper.

11.      William Hickman, Sarah Hickman, Michael Pepper, and MJP, and each of them, will not use or permit the Subject Properties to be used in any manner that would invalidate insurance on the property or diminish the value of the property, or cause any alteration to the Property without the prior written consent of the Office.

12.      The net proceeds from the sale of the Subject Properties will include all monies realized from the sale of the Subject Properties, except for the following:

        (a)      Real estate commissions, if any;

        (b)      Any other real estate, property, transfer, association or other taxes which are due and owing;

(c)     Insurance costs, if any;

(d)     Escrow fees;

(e)     Document recording fees not paid by the buyer;

(f)     Title fees;

(g)     County transfer fees; and

(h)     Reasonable real estate attorney's fees, if any, with respect to the sale of the Subject Properties.

13.     The net proceeds shall be paid by postal money order, attorney's trust account, bank, or certified check, made payable, in this instance to the U.S. Department of Treasury, and delivered to the United States Attorney's Office, District of New Jersey, Attn: Asset Forfeiture and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102, and shall indicate the address of the property in the memorandum section of the check.

14.     As required by Supplemental Rule G(7)(b)(iv), the net proceeds shall be held by the U.S. Department of Treasury in an interest-bearing account as a substitute *res* subject to forfeiture in place of the property that was sold.  All claims and defenses applicable to the real property will apply to the Substitute Res.  Nothing in this agreement shall be construed to be a waiver of any rights, claims, or interests held by any of the Parties in connection with the Subject Properties.

15.     The United States will provide an original cancellation of the notice of lis pendens to the closing attorney or title company that is issuing title insurance policy for the purchaser of the Subject Properties to hold in

escrow until the sale closes in conformance with the terms and conditions set forth in this Stipulation and Order.

16.    William Hickman, Sara Hickman, Michael Pepper, and MJP are each hereby barred from asserting any claim against the United States of America, its departments and agencies, officers, employees, and agents, in their individual and official capacities, in connection with or arising out of, the United States' actions against and relating to the Subject Properties.

17.    William Hickman, Sara Hickman, Michael Pepper, and MJP each agree to notify the Office promptly if either of them learns of any condition that might affect the sale of the Subject Properties.

18.    The undersigned individuals signing this Stipulation and Order on behalf of William Hickman, Sara Hickman, Michael Pepper, and MJP represent and warrant that they have full authority to execute this Stipulation and Order. The United States signatory represents that he or she is signing this Stipulation and Order in his or her official capacity and that he or she is authorized to execute this Stipulation and Order.

19.    The Office reserves the right, in its discretion, to terminate the forfeiture at any time and release the Subject Properties. In either event, the Office shall promptly notify the other Parties of such action. A discretionary termination of forfeiture shall not be a basis for any award of attorney's fees or costs.

20.    It is understood that this Stipulation and Order is conditioned upon there being no other claim filed to the Subject Properties, or any portion

thereof, that complies with 18 U.S.C. § 853(n) and all other applicable

provisions of law, i.e., a timely filed claim that asserts an ownership interest in

the Subject Properties or any portion thereof.  In the event that such a claim is

filed with respect to the Subject Properties or any portion thereof, this

Stipulation and Order shall become voidable by the Office and shall, if voided,

be of no further force or effect.  If voided, the United States, William Hickman,

Sara Hickman, Michael Pepper, and MJP shall each retain all rights available

to them as of the date of the final execution of this Stipulation and Order.

21.   Each party agrees to bear its costs and attorneys' fees.

22.   The signature pages of this Stipulation and Order may be executed

in one or more counterparts and transmitted by facsimile or electronic means.

Each counterpart will be deemed an original, and all of them together will

constitute one and the same instrument.

23.   This Court shall retain jurisdiction in this matter to take additional

action and enter further orders as necessary to implement and enforce this

Stipulation and Order authorizing the sale of the Subject Properties.

24.   This Stipulation and Order constitutes the complete agreement

between the signatories hereto and may not be amended except by written

consent thereof.

ORDERED this            day of                  , 2019.


_____
HONORABLE ROBERT B. KUGLER
United States District Judge