## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES

v.

WILLIAM HICKMAN, *et al*.,

          *Defendants*.

Docket No.:  1:19-cr-191

Before: Robert B. Kugler,
        United States District Judge

## REPLY BRIEF IN FURTHER SUPPORT OF

## DEFENDANT BRIAN PUGH'S PRETRIAL MOTIONS

**BALDASSARE & MARA, LLC**
570 Broad St., Suite 900
Newark, New Jersey 07102
(973) 200-4066

*Attorneys for Defendant Brian Pugh*

On the Brief:

Michael Baldassare, Esq.
Jennifer Mara, Esq.
Charles Kennedy, Esq.

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     COUNT 1 OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT
        IMPERMISSIBLY ALLEGES A RIMLESS WHEEL, HUB-AND-SPOKE
        CONSPIRACY. ........................................................................................... 2

III.    COUNTS 9 THROUGH 13 SHOULD BE DISMISSED BECAUSE THEY DO
        NOT ALLEGE A SINGLE FRAUDULENT STATEMENT OR
        MISREPRESENTATION ................................................................................. 10

IV.     COUNT 28 SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE A
        SINGLE CONSPIRACY. ................................................................................. 12

V.      COUNTS 37, 38, 49 & 50 SHOULD BE DISMISSED BECAUSE THEY
        CHARGE MR. PUGH WITH AN OFFENSE THAT IS NOT COGNIZABLE AT
        LAW. .......................................................................................................... 13

VI.     THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS. .................... 16

VII.    THE COURT SHOULD SEVER MR. PUGH'S CASE PURSUANT TO RULE
        14............................................................................................................... 20

VIII.   THE COURT SHOULD ORDER THE PRODUCTION OF A VERY LIMITED
        PORTION OF THE GRAND JURY TRANSCRIPTS. ............................................ 21

IX.     THIS CASE SHOULD BE TRANSFERRED TO THE NEWARK VICINAGE
        FOR TRIAL DUE TO PREJUDICIAL PRETRIAL PUBLICITY. ............................. 22

X.      CONCLUSION.............................................................................................. 24

## I.       PRELIMINARY STATEMENT

If Your Honor leaves the government's Opposition Brief with one takeaway, it should be this:  the government never thought it would get this far and now, its true legal theory has to find its sea legs.  That is the only plausible explanation for the government's flawed legal arguments; the government's war-like stance against a bill of particulars in a case that presents no danger to witnesses; and the government's refusal to quote from the Indictment it proudly drafted – choosing instead to summarize the allegations in a way that, to put it mildly, requires plenty of explaining.

The government truly shows its hand when it claims – out of hope and desperation now that it will be tested and have to put up – that, based on taking a series of guilty pleas, this Court is "intimately familiar" with Mr. Pugh's case.  Opp'n Br. at 33.  Respectfully, the Court has heard little from Defendants and virtually nothing to challenge the U.S. Attorney's Office on this matter.  The pleas involve Defendants saying "Yes" over and over and an offer of proof on mundane jurisdictional topics from the government.  Mr. Pugh is confident that, whatever this Court has heard from individuals who have pled guilty, he will be judged anew, and that this Court will soundly reject any suggestion by the government that the Court is "intimately familiar" with the factual and legal issues presented as Mr. Pugh fights to clear his name.

**II.    COUNT 1 OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT IMPERMISSIBLY ALLEGES A RIMLESS WHEEL, HUB-AND-SPOKE CONSPIRACY.**

In Point II, Mr. Pugh moved to dismiss Count 1 because it charges multiple conspiracies, rather than one, as it purports to do.  Mov. Br. at 7-22.  The government's opposition presents a mish-mash of two legal standards, one of which is inapplicable, the other of which is addressed almost in passing because meeting it head-on would expose the Indictment's failure to allege one conspiracy.  Moreover, in a rare and telling juxtaposition, it is the *government* that summarizes its own Indictment, while the *defense* quotes it verbatim.  Indeed, the government complains that the defense focuses on "individual paragraphs," yet offers no alternatives on which the Court should focus, instead summarizing paragraphs in ways that, as discussed herein, are just materially unfair to the legal inquiry this Court must undertake.  And, the government ignores the import of the leading cases, opting instead for a breezy opposition that carries the undercurrent of the always uncompelling argument:  "We do it this way this all the time."  Against that backdrop, the government's opposition fails to rebut any of Mr. Pugh's legal arguments in support of dismissal regarding Count 1 for the following three reasons.

First, the government pushes together two legal standards, one of which does not apply.  The law is clear:  the applicable legal standard is the three-part test set forth in *United States v. Kelly*, 892 F.2d 255 (3d Cir. 1989).  The government begrudgingly concedes this, Opp'n Br. at 6, but before doing so, tries to mask it with a preceding argument that "the law is clear that whether there are multiple conspiracies is an issue of fact for the trial jury."  *Id.* at 2.  Thus, to read the government's brief, one might conclude that there is no grand jury clause and that if there is, it offers no protections and that if it does, those protections are not triggered until a conviction.  So much, under the government's theory, for

> the responsibility of the court to preserve the grand jury's historic
> role as a bulwark between the individual and the state.

*In re Grand Jury Matter (Gronowicz)*, 764 F.2d 983, 991 (3d Cir. 1985).

As this Court knows, the government's argument is at odds with Fifth Amendment grand jury law because that body "controls not only the initial decision to indict, but also significant decisions such as how many counts to charge[.]"  *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998).  Indeed, it "is the duty of the grand jury to shield a citizen from unfounded charges and to require him to appear in court in defense, only if probable cause has been found by the independent body.  Until that prerequisite has been met, the accused is not properly before the court."  *United States v. Goldstein*, 502 F.2d 526, 529 (3d Cir. 1974).

The law does not to support the government's argument that there is no viable motion to dismiss based upon an Indictment – carefully and wrongly drafted by the government – that fails to allege a single conspiracy.  *The fact that the government thought it would bully all the Defendants, that it would never have to answer for its Indictment, is not Mr. Pugh's problem.* The Fifth Amendment lays that problem at the feet of the U.S. Attorney's Office which drafted the document, presented it to the grand jurors, instructed them on the law, asked them to vote on it, handcuffed Mr. Pugh based on it and now seek to imprison him because of it.

The government's argument is that this issue is not ripe.  The mere fact that there is robust case law on this issue – as Mr. Pugh has already demonstrated for the Court in his moving brief – demonstrates why the government's opposition is just wrong on the law.  That conclusion is inescapable even before the Court considers the substance of the cases and how they, too, guide this analysis toward a conclusion that Counts 1 and 28 should be dismissed.

Contrary to the government's argument, Mr. Pugh's *Kotteakos* motion is not something reserved for the jury after a conviction.  Indeed, such motions to dismiss have been granted in the pretrial setting in the District of New Jersey.  Merely by way of example, in *United States v. Hinton*, the court granted such a motion in a bank fraud conspiracy, because the

> transactions executed in furtherance of frauds against six separate financial institutions. The dates and alleged perpetrator(s) for a particular institution's transactions do not *generally* overlap, no

transaction was directed at more than a single institution, and none of the accounts used exists in more than one bank. *Generally*, different confederates were allegedly employed in contacts with the defrauded banks.

127 F. Supp. 548, 556 (D.N.J. 2000) (emphasis added).[1]  The Court also noted that because of the duplicitous nature of the indictment, "it would not be possible to determine which aspects of this *so-called unified scheme* had been proved as to which financial institutions." *Id.* (emphasis added).  The court rejected the government's well-worn argument about conserving resources.  That consideration is irrelevant when an indictment is duplicitous "even if distinct similarities in the means and methods of the schemes … exist in the proofs." *Id.*

*Hinton* is not a red herring.  Again, contrary to the government's entire argument regarding the dismissal of Count 1 (and for that matter the dismissal of Count 28), courts within the Third Circuit regularly hold that duplicity is appropriately considered and decided on a motion to dismiss.  *See United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010) ("An impermissibly duplicitous indictment is subject to dismissal."); *United States v. Sourlis*, 953 F. Supp. 568, 572 (D.N.J. 1996); *United States v. Starks*, 515 F.2d 112, 117 (3d Cir. 1975) (duplicitous count requires court to dismiss count or require government to select one of the offenses encompassed by duplicitous count).  *See also United States v. Hornick*, 491 Fed. Appx. 277, 285 (3d Cir. 2012) (applying *Kelly* factors in review of pretrial motion to dismiss for duplicity); *United States v. Leadbeater*, No. 13-CR-121 (JBS), 2015 U.S. Dist. LEXIS 15604 (D.N.J. Feb. 10, 2015) (applying *Kelly* factors on pretrial motion to dismiss duplicitous count); *United States v. Gambone*, 125 F. Supp. 2d 128 (E.D. Pa. 2000) (same); *United States v. Boffa*, 513 F. Supp. 444, 472 (D. Del. 1980) (applying *Kelly* factors to pretrial motion to dismiss based on multiple conspiracies charged in one count and duplicity).

---

[1] The court's notation of "generally" is important because it shows that a bright-line separation among the spokes is not even required to warrant dismissal.  In Mr. Pugh's case, however, the Indictment explicitly pleads such a line. *See, e.g.*, Ind. ¶¶ 9, 24.

Second, when the government begrudgingly and briefly acknowledges the legal standard, there is concession after concession that all but concedes the *Kelly* requirements.  Consider, for example, the stunning admission presented in the government's opposition to *Kelly* prong three which, as the Court knows, requires an evaluation of the extent to which there was, or was not, an overlap among the participants.  On this point, Mr. Pugh provided the Court with a fulsome discussion of Third Circuit law (*e.g.*, *Kemp*, *Rigas*) and a chart of the Indictment that demonstrated the segregation of charges, *i.e.*, the lack of any overlap among the participants. Mov. Br. at 21-22.

The sum total of the government's opposition is this:

> The Indictment alleges extensive overlap in the conspirators' various dealings, both all seven together as well as overlap of particular subgroups of conspirators.

Opp'n Br. at 6.  That bold and all-encompassing statement is not followed by any support from any authority of any kind.  Unlike Mr. Pugh's brief, the government does not quote a single passage from its Indictment.  Unlike Mr. Pugh's brief, the government does not cite to its Indictment.  Unlike Mr. Pugh's brief, the government does not cite a single case to analogize to the Indictment.  The government does not distinguish any of Mr. Pugh's cases.  The government never meets Mr. Pugh's detailed arguments head-on.

The government fares no better regarding *Kelly* prongs One and Two.  Rather than speak in generalities, Mr. Pugh will meet the government's arguments head-on, specifically rebutting each one.  Page Five of the Opposition Brief begins with seven bullet points aimed to demonstrate that the Indictment alleges a single conspiracy.  Here is why those bullet points prove no such thing and why, in fact, when fairly placed in the context of the entire Indictment, as written by the U.S. Attorney's Office, they harm – rather help – the government's argument:

| **Government Opposition at 5** | **Defense Reply** |
|---|---|
| "learned that the Pharmacy Benefits Administrator would pay thousands of dollars for a one-month supply of certain medications (Ind. ¶ 5)" | Even if true, this allegation is hardly evidence of a single conspiracy or, for that matter any conspiracy at all given that tens of thousands of people in New Jersey must be aware of it. This is not a trade secret. There is no "inside baseball." This allegation is like saying, "All alleged co-conspirators learned that the Yankees have won more World Series titles than any other Major League Baseball Team." |
| "shared in the proceeds of the fraud (Ind. ¶ 9)" | The government's summary of Paragraph 9 is particularly troubling. That Paragraph actually says that Mr. Pugh only shared in the proceeds "<u>for the prescriptions that [he] and [his] recruiters obtained</u>." (emphasis added.) Thus, Paragraph 9 actually supports the existence of a spoke conspiracy, not one conspiracy and the government's need to summarize its own Indictment, rather than quote it, is a telling concession. |
| "recruited public employees and others who had insurance administered by the Pharmacy Benefits Administrator (Ind. ¶ 10)" | Putting aside the government's vehement opposition to telling Mr. Pugh who he recruited, this bullet overlooks that all the allegations segregate Mr. Pugh and his alleged "recruits," just as they do for all the other alleged "recruiters" such as Michel Sher and Matthew Tedesco. *See, e.g.*, Ind. Count 1 (¶¶ 24(h)-(l), (z); Counts 9-13. |
| "paid other people to recruit individuals (Ind. ¶ 11)" | Until the government identifies these people, which it refuses to do, it is wholly unfair to require Mr. Pugh and, quite frankly this Court – which must make an adequate record – to rely on these vague allegations. One thing is certain, if these individuals are ever identified, their alleged actions will be segregated along the lines drawn in the Indictment – a.k.a. the "spokes" – like everything else in this case. *See, e.g.*, Ind. Count 1 (¶¶ 24(h)-(l), (z); Counts 9-13.. |
| "paid individuals to agree to receive medications (Ind. ¶ 12)" | See preceding reply. |
| "caused the completion of new prescriptions after the Pharmacy Benefits Administrator stopped | See preceding reply. Further, this is a small snippet summary from a long paragraph that |

| | |
|---|---|
| covering a medication (Ind. ¶ 21)" | contains many vague terms. If anything, this Paragraph in the Indictment is a classic example of an allegation that many people may have had the *same* goal without an allegation that it was the *common* goal sufficient to warrant a charge of a single conspiracy. *See, e.g.*, *United States v. Kemp*, 500 F.3d 257, 288 (3d Cir. 2007). |
| "caused the Pharmacy Benefits Administrator to pay over $50,000,000 for compounded medications (Ind. ¶ 23)" | See preceding reply. |

So much for the government's initial use of summary bullet points to defend its own Indictment, rather than relying on the language it drafted with the confidence it would never be tested or pressed to answer for.

The second list of bullet points on Page Five of the Opposition Brief provide no support for the finding of a single conspiracy. The government ignores the well-settled law from the Third Circuit, which establishes the bedrock principle that indictments are read as a "whole," and not by summary, and that reading the "*precise manner in which an indictment is drawn cannot be ignored," United States v. Schramm*, 75 F.3d 156, 162 (3d Cir. 1996) (emphasis added) (quoting *Sanabria v. United States*, 437 U.S. 54, 65-66 (1978)). Thus, those bullets, which *summarize portions* of *general* Paragraphs of the Indictment (¶¶ 13, 14, 16, 18 and 20), ignore the "precise" Paragraphs (¶¶ 9, 24), *i.e.*, the Indictment as a "whole." The government's presentation of those bullets demonstrates that it has little to rely on in the language of its Indictment because it never expected Brian Pugh to fight the allegations against him.

Also, contrary to the government's argument, defendants can have the <u>same</u> goal without it being a <u>common</u> goal for purposes of the *Kelly* standard. Mr. Pugh made precisely that point in his brief and provided legal authority for it:

> The absence of any evidence of a common goal, overlapping membership among the various spokes of the conspiracy, or interdependence of the spokes reinforces our conclusion that the

> government failed to prove a single conspiracy.  First, although
> each of these alleged spoke conspiracies had the same goal, there
> was no evidence that this was a common goal.

*United States v. Chandler,* 388 F.3d 796, 811 (11th Cir. 2004)*.*  The Third Circuit in *United States v. Kemp* relied upon this reasoning in its *Kelly* analysis.  *See* 500 F.3d at 288.  The government alleges no overlap among the spokes, contrary to Third Circuit jurisprudence.  Rather than meeting those arguments and that legal authority, the government presents pure argument over and over as if repetition will blunt the sting of contrary jurisprudence.  Opp'n Br. at 5-6.  For this second reason, the government's opposition fails.

<u>Third</u>, faced with the obvious hub and spoke Indictment it drafted, the government ignores the graphics in Mr. Pugh's presentation.  The government claims this is not a hub and spoke, but it is "more like the pyramid" scheme in *United States v. Greenidge*.  Opp'n Br. at 7.  Of course, and unlike Mr. Pugh, the government does not try to aid this Court by mapping out how this Indictment alleges a pyramid scheme.  (It does not and cannot be so represented because it is not a pyramid scheme.)  To be sure, each *<u>spoke</u>* may ultimately devolve into looking like a pyramid, but that means nothing.  There is no law that each spoke must be a straight line with one person to another person.  What matters is whether each spoke – however it spreads – becomes connected to any other spoke with a rim.  That is the purpose of *Kelly*'s analysis.  In this case, the spokes (even if each looks like a pyramid) do not connect and, therefore, Count 1 should be dismissed.

The government's cases are dissimilar from the matter before the Court.  In *Greenidge*, the defendant had an agreement in which they received a percentage payment.  495 F.3d 85, 94 (3d Cir. 2007)  They therefore benefitted from the entirety of the conspiracy, not just their actions in it.  *Id.* at 94.  In *Onque*, the court noted, "each transaction involved at least one conspiracy leader, one straw purchaser, and one or more industry insiders, in satisfaction of the overlap requirement."  *United States v. Onque*, 665 F. App'x 189, 194 (3d Cir. 2016). There, the

"transactions overlapped in purpose, in practice, and in participants with the other transactions[.]"  Here, in contrast, the government alleges absolutely no overlap between, for example, the alleged middle tiers in the scheme.  *Padilla* is inapplicable, as it involved a cocaine distribution conspiracy, *i.e.*, a classic chain and link conspiracy.  *United States v. Padilla*, 982 F.2d 110 (3d Cir. 1992).  *See also United States v. Kelly*, 892 F.2d at 257 (drug conspiracy argued under the theory it was a chain).  Thus, even the government's best cases cannot save this Indictment as drafted.  At some point, this Court must step in, and that time is now.

For all these reasons, the Motion should be granted.

III.   **COUNTS 9 THROUGH 13 SHOULD BE DISMISSED BECAUSE THEY DO NOT ALLEGE A SINGLE FRAUDULENT STATEMENT OR MISREPRESENTATION.**

In Point III, Mr. Pugh moved to dismiss Counts 9 through 13 because they failed, as required by law, to allege a fraudulent statement or misrepresentation.  Mov. Br. at 23-28.  As always, Mr. Pugh relied on the explicit language of the Indictment.  Mov. Br. at 25-26.  He also presented the Court with support from the Third Circuit's model jury instructions and a wealth of settled case law.  Mov. Br. at 23-24.  Together, all of that authority demonstrated that the Indictment failed to allege the material misrepresentation required for these Counts.

In ostensibly addressing Mr. Pugh's argument that the healthcare fraud Counts are impermissibly vague, the government completely misses the mark.  The government points to the "prescriptions" in a generic sense as the supposed material misrepresentations, and provides no further detail.  Opp'n Br. at 13.  Indeed, it relegates the one paragraph in the Indictment providing any detail regarding the alleged misrepresentations to a footnote.  Opp'n Br. at 12 n.9.  And, in responding to Mr. Pugh's argument that the use of the disjunctive "and/or" in Paragraph 18 renders the Counts legally infirm, the government (irrelevantly) cites to cases supporting its right to allege alternative means of committing an offense; thus, the government conveniently ignores Mr. Pugh's larger – and actual – point:  that several of the alleged problems with the prescriptions cannot be material misrepresentations **as a matter of law**.  Mov. Br. at 26.  For example, subsection (c) of paragraph 18 alleges that prescriptions were signed "without the doctors considering a non-compounded prescription or over-the-counter medication for the individuals."  Standing alone, this simply does not constitute a material misrepresentation, as there is no relevant statute or rule cited for the proposition that such consideration is required and that, therefore, the failure to do so converts a signed prescription into a material

misrepresentation.  Thus, while it may be true that the government may allege alternate means of committing a crime, its attempt to do so in this case is not legally sustainable.

For these reasons, the government's opposition is unpersuasive and Counts 9 through 13 should be dismissed.

## IV.  COUNT 28 SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE A SINGLE CONSPIRACY.

In Point IV, Mr. Pugh moved to dismiss Count 28 because, like Count 1, it fails to allege a single conspiracy.  Mov. Br. at 29-30.  As with Count 1, Mr. Pugh established that Count 28 should be dismissed because it failed to allege a common goal (the Indictment has no factual allegations that Mr. Pugh conspired with the Hickmans to launder money, *e.g.*, no allegations regarding meetings, telephone calls, emails, etc., regarding any of the monetary transactions at issue).  The Indictment's allegations do not support a continued course of conduct that needed Mr. Pugh.  Nor was there an overlap among participants sufficient to demonstrate a single conspiracy.

In opposition, the government concedes that the Indictment alleges that Mr. Pugh and the Hickmans worked together only "in one identified transaction."  Opp'n Br. at 9.  After giving passing acknowledgment of the required elements under *Kelly*, the government (like its Indictment) says little else about why Mr. Pugh should be held criminally responsible for an alleged money laundering conspiracy encompassing $5,260,419.92 in monetary transactions.  Clearly, the government has overreached and Count 28 should be dismissed.

**V.      COUNTS 37, 38, 49 & 50 SHOULD BE DISMISSED BECAUSE THEY CHARGE MR. PUGH WITH AN OFFENSE THAT IS NOT COGNIZABLE AT LAW.**

In Point V, Mr. Pugh moved to dismiss Counts 37, 38, 49 and 50 because they charged him with aiding and abetting himself, something that is not a federally cognizable crime.  Mov. Br. at 31-34.  In support of that argument, Mr. Pugh – as he has done with respect to every pretrial motion – relied upon the explicit language of the Indictment.  Also, he provided this Court with a long line of non-controversial cases, all of which contained clear language such as "one cannot … aid and abet oneself."  Mov. Br. at 31 (quoting *United States v. Verners*, 53 F.3d 291, 295 n.2 (10th Cir. 1995)).  In opposition, the government continues its theme of ignoring the plain language of its own Indictment, refusing to respond to Mr. Pugh's cases, and relying on cases that do little, if anything, to establish a firm rebuttal to his basis for relief (in this case the dismissal of four Counts).

<u>First</u>, after the build-up of a general discussion, the government provides the thesis of its opposition:  aiding and abetting liability under § 2 "is always available as a basis for criminal liability."  Opp'n Br. at 9.  That is wrong as a matter of law and the government invites this Court to commit reversible error by basing any decision on such a conclusion.  Section 2 liability is not always available, plain and simple.  As Chief Judge Wolfson succinctly stated:

> Mosberg correctly argues that, with respect to the bribery affecting federal funds charges in Counts 8-11 of the Indictment, the aiding and abetting charges make no sense.  Counts 8-11 are directed solely at Mosberg's own conduct and he cannot aid and abet his own bribery.  Thus, these aiding and abetting charges are hereby dismissed.

*United States v. Mosberg*, 866 F. Supp. 2d 275, 311 (D.N.J. 2011).  The cases cited in Mr. Pugh's moving brief, such as *Hassoun*, *Verners*, *Brown*, *Doughty*, *Cartwright*, *Salmon*, *Dixon*, *Nolan*, *Nye*, *Landers*, *Beutenmuller*, *Mann* and *Martin*, Mov. Br. at 31-32, clearly and succinctly demonstrate that this portion of the government's one-page argument reveals a desperation to save these four Counts.

-13-

Second, the government's vague and convoluted argument regarding the existence of a principal, Opp'n Br. at 10, is insufficient because *neither the Indictment nor the opposition brief allege – as the law requires – the existence of a criminally culpable principle. See, e.g., Hendrix v. United States*, 327 F.2d 971, 975 (10th Cir. 1964) (stating that "[t]o sustain conviction of defendant who has been charged as an aider and abettor it is necessary that there be evidence showing an offense was committed by a principal who was aided and abetted by the accused, although it is not necessary that principal be convicted or his identity established."); *United States v. Provenzano*, 334 F.2d 678, 691 (3d Cir. 1946) (noting that "proof must establish that the crime in question was committed by someone and that the person charged as an aider and abettor, aided and abetted in its commission").

Further, it is misleading to tell this Court – without any explanation – that "a defendant may be held liable for committing a crime through another, even if the other is innocent." Opp'n Br. at 10 (citing *United States v. Bryan*, 483 F.2d 88, 92 (3d Cir. 1973) (en banc)). *Bryan* stands for the unremarkable proposition that a defendant can be found guilty as an aider and abettor *even if the principal is acquitted, i.e., "innocent."* 483 F.2d at 94-95. *Bryan* does not stand for the proposition that an individual, such as Mr. Pugh, can be found guilty as an aider and abettor *where there is no accusation against a principal for criminal culpability for the underlying crime*. **Thus, in this case, where there is no accusation that BP Med 1 LLC or anyone else involved in the transactions discussed in these four Counts is guilty of money laundering, there is no principal. At that point, § 2 becomes unavailable.** Indeed, the Third Circuit requires the following charge as the first element for § 2:

> That (name of alleged principal) committed the offense(s) charged by committing each of the elements of the offense(s) charged, as I have explained those elements to you in these instructions. ((Name of alleged principal) need not have been charged with or found guilty of the offense(s), however, as long as you find that the

government proved beyond a reasonable doubt that (he) (she) committed the offense(s)).

*Third Circuit Model Criminal Jury Instructions*, 7.02.   Respectfully, so much for the government's argument that an "innocent," unnamed, unaccused party – against whom or which there is no allegation or reference of wrongdoing in the Indictment regarding the underlying crime – can serve as a principal to save these four Counts.

<u>Third</u>, just as the government should never have relied upon *Bryan*, *supra*, the opposition brief finds no support in *Burnham v. United States*, 297 F.2d 523, 523 (1st Cir. 1961).   That case is cited for a strawman argument.   Mr. Pugh never claimed that one could not aid or abet a partnership, thus the government's cite to *Burnham* is irrelevant.   Further, the government's citation to a 10-page swath of *United States v. Am. Inv. of Pittsburgh*, Inc. 879 F.2d 1087 (3d Cir. 1989), does not matter.   Opp'n Br. at 10.   That case is legally and factually so far afield from this case, it warrants little discussion.   It has nothing to do with the issues raised by Mr. Pugh.   It addresses more strawman arguments.

For all these reasons, Counts 37, 38, 49 and 50 should be dismissed.

## VI.     THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS.

In Point VI, Mr. Pugh moved for a bill of particulars on a number of issues because, despite its length, the Indictment repeatedly employs vague terms in a variety of settings, *e.g.,* "medical necessity," "other" doctors, "other" individuals (in a variety of settings charged with varying levels of knowledge and actions), "associates," "benefits," and so on.  Mov. Br. at 35-51. Given the imprecision that characterizes this Indictment, Mr. Pugh's bill of particulars motion was far more detailed and demanding than the usual request which seeks the identity of unindicted co-conspirators and the "elsewhere" a crime is alleged to have been committed (though he seeks that information here as well).

The government's opposition – surprising in its scope and ferocity – is telling and this Court should require the government to give the details Mr. Pugh needs to avoid trial by surprise. There are at least three reasons why the government's opposition does not overcome Mr. Pugh's need for a bill of particulars.

<u>First</u>, the time and energy spent by the government in opposing Mr. Pugh's request for a bill of particulars reveal the government's trepidation about its own case.  That is the only explanation for why the government's longest argument (six pages) is dedicated to withholding the information Mr. Pugh seeks.  To be sure, the pending motions to dismiss present a more cataclysmic danger to the government's desire to convict Brian Pugh, but it is the vigor with which the government resists providing details that tells the real story.  The government has never had to think this case through to the level of specificity required to answer these motions and now, it is simply not prepared to do so.  The government does not really know what the *material* misrepresentations are so it basically says, "The whole piece of paper."

-16-

The government has no idea how "medical necessity" fits into this case, how it will be proven or whether it is even part of a cognizable federal offense.[2]  The government has never had to focus on the scope of alleged co-conspirators because – up until now – Defendants have largely said nothing but, "Okay," to what the government demanded.  Now, the government cannot fathom having to parse dozens of people into legally cognizable groups of alleged co-conspirators.  Thus, rather than provide the information, the government's strategy is this: argue all Defendants' arguments have "no merit" whatsoever, Opp'n Br. at 1, *wait things out and pray that everyone pleads.*

To be sure, the government can bludgeon Defendants with proposed calculations using the Federal Sentencing Guidelines.  Of course, the government can navigate to that Change of Plea Hearing by using its charging discretion and even its "uncharging" discretion (as we saw recently regarding Sara Hickman, the former number two Defendant who vanished from this case with amazing speed and efficiency).  All of that is easy when one party holds all the cards.

*Now*, however, the government has a problem.  In Mr. Pugh's case, the government cannot avoid providing specifics by putting a factual basis in front of a school teacher or police office or fireman or mom or dad and requiring (even though the statute may not) that person to say "no, there was no medical necessity" even though the Defendant has no idea what that term means in context.  *Now*, the government is being called upon to say what that phrase means and, because the government never thought the case would go this far, it has no specific answer, other than a litany of problems that fail to meet the specificity required by law.

---

[2] The government's scattershot approach to its case, and why it wants to keep all options open, is nicely demonstrated by the concept of "medical necessity."  The government indicted William Hickman (and charged many others) for purporting to make "medical necessity" determinations without any training. *See*, *e.g.*, Ind. ¶ 13. Yet, when it suits the government, it sees no problem with placing those same people – such as Mr. Hickman – under oath before this Court to plead guilty and provide sworn testimony on what is or is not medically necessary. The government wants it both ways because, despite years of investigation and prosecution, it still had not settled on a viable theory to bring this matter to trial.

The government's decision to fight so hard *(rather than just identify Mr. Pugh's other alleged co-conspirators and the alleged material misrepresentations, as well as providing a source for the definition of "medical necessity")* is reason enough to be suspicious of its opposition.  The following flaws in the government's argument demonstrate why Mr. Pugh's motion should be granted.

<u>Second</u>, the government argues that a bill of particulars is not warranted because it has provided voluminous discovery.  Of course, the government never acknowledges that much of the information Mr. Pugh seeks is not in the discovery.  Nor does the government address the law, as set forth in Mr. Pugh's moving brief, that the volume of discovery in this case weighs in favor of granting a bill of particulars.  Mov. Br. at 39.  *See United States v. Urso*, 369 F. Supp. 2d 254, 771 (E.D.N.Y. 2005) ("However, a bill of particulars is appropriately granted where the government's pre-trial discovery disclosures are so voluminous that the defendant remains in the dark about the specific acts of which he is accused").  *See also United States v. Barrett*, 153 F. Supp. 3d 552, 572-73 (E.D.N.Y. 2015) (stating that the voluminous pre-trial disclosure, greater than ten thousand pages of documents, weighed in *favor* of granting a bill of particulars).  Here again, the government's opposition misses the mark.

<u>Third</u>, the government argues that this Court must "weigh the burden on the Government[.]"  Opp'n Br. at 25.  The government cries foul, claiming providing a bill of particulars visits unfairness on the U.S. Attorney's Office.  *Id.* at 25.  The government never articulates how or why it will be burdened; the government never returns to an unfairness argument.  As usual, the government just argues but never links anything to this case.  Here, the government quotes three cases and moves on.  Those three cases, however, only serve to establish that the government really has no good opposition argument:

- *United States v. Crabb*, 2008 WL 794871, at *3 (M.D. Pa. March 24, 2008).  In *Crabb*, the defendant's motion was denied because (a) he already had the names of his co-conspirators – something the government has refused to provide to Mr. Pugh –

and (b) because he demanded information far outside what was specifically stated in the indictment, unlike Mr. Pugh, who only seeks information regarding the words used by the government in the document it wrote and presented to the grand jury. Thus, *Crabb* is an odd choice for the government here.

- *United States v. Zolp*, 649 F. Supp. 692, 706 (D.N.J. 1987).  In *Zolp*, the court found that the indictment provided the defendants with a great deal of very specific information – as opposed to the "figure it out yourself" position taken by the government here.  Indeed, page after page of *Zolp* is based upon the indictment and demonstrates the rich detail provided there.  Again, a case the government should not have brought to the fore.

- *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).  The government's quote of *Rosa* is incomplete in a material way.  Underlining the words left out by the government, the statement reads, "the unfairness that can result from forcing the government to commit itself to a specific version of the facts <u>before it is in a position to do so.</u>"  The government never claims it is not ready to divulge the information requested.  Surely it cannot be after years and years of investigation.  The government wants to hold the information so it has a better chance to win.  There is no law for that proposition and this Court would never aid such an endeavor.

For all these reasons, it is clear that Mr. Pugh's request for a bill of particulars should be granted.

## VII.    THE COURT SHOULD SEVER MR. PUGH'S CASE PURSUANT TO RULE 14.

In Point VII, Mr. Pugh moved for a severance pursuant to Federal Rule of Criminal Procedure 14. Mov. Br. at 52-55. The government opposed that motion. Opp'n Br. at 16. Mr. Pugh's severance motion was based largely on the presence of Defendants William and Sara Hickman as co-Defendants at trial. As the Court knows, Mr. Hickman has pled guilty and Ms. Hickman has been dismissed. *See* Doc. Nos. 125 & 133.

Thus, at this time, Mr. Pugh's motion, as articulated in his Moving Brief, would appear to be moot. Mr. Pugh reserves his right to seek a severance from his remaining co-Defendants following the Court's rulings on the now-pending pretrial motions. Further, Mr. Pugh reserves all rights on all issues regarding Defendants William and Sara Hickman as this matter proceeds.

## VIII.   THE COURT SHOULD ORDER THE PRODUCTION OF A VERY LIMITED PORTION OF THE GRAND JURY TRANSCRIPTS.

In Point VIII, Mr. Pugh moved for the production of a limited portion of the grand jury transcripts.  Mov. Br. at 56-60.  This motion is a corollary to Mr. Pugh's Motion to Dismiss Counts 37, 38, 49 & 50 because they charge him with aiding and abetting himself, a crime that does not exist.  Mov. Br. at 31-34.  The legal standard is straightforward and Mr. Pugh satisfies the requirements of Federal Rule of Criminal Procedure 6 and the primary cases.  Mov. Br. at 56-60.  The government's one-page opposition amounts to nothing because, as the circular and self-proving argument goes, there is no basis to dismiss so there is no basis to produce the grand jury transcripts.  Opp'n Br. at 29-30.

The government is wrong to conflate the two (dismissal versus a review of the grand jury instructions on the law).  The government provides no law on this point.  It is clear that Mr. Pugh is not "merely speculating," Opp'n Br. at 30, on this issue.  To the contrary, his motion is based – as are all of these pretrial motions (and unlike the government's opposition arguments) – on the very clear and precise wording of the government-drafted Indictment.  Under the law as set forth in Mr. Pugh's moving brief, even if dismissal is not yet warranted, the face of the Indictment warrants a review of this limited portion of the grand jury transcripts.

-21-

**IX.      THIS CASE SHOULD BE TRANSFERRED TO THE NEWARK VICINAGE FOR TRIAL DUE TO PREJUDICIAL PRETRIAL PUBLICITY.**

In Point IX, Mr. Pugh moved for a transfer to the Newark vicinage based upon the FBI's violation of both the grand jury secrecy rules and the FBI's own policies and procedures; Mr. Pugh also relied upon the press generated by those FBI violations, both directly and indirectly, as well as other press that appears unrelated to the FBI's actions.  Mov. Br. at 61-65.  The government's opposition persuades little, but reveals much.

First, the government does not even try to defend the FBI's actions.  The government does not challenge the facts and documents submitted which demonstrate that there was a violation of the grand jury secrecy rules and the FBI's own policies and procedures.  In sum, the government – through its deafening silence – admits that what Mr. Pugh uncovered about the FBI is accurate.  Rather than remedy it, rather than acknowledge it, rather than deal with it, the government ignores it.  Unfortunately, the FBI agents are agents in every sense of the word and they act for these prosecutors.  For this reason alone, given the press generated by this local FBI field office, this matter should be transferred to Newark.

Second, when deciding these motions (and since the government chose to rely on the inapplicable legal standard of Rule 21 cases) district courts do not given any real weight to where the prosecutors live, *even when transferring cases to another state*, let alone just up the Turnpike.  *See United States v. Muratoski*, 413 F. Supp. 2d 8, 12 (Government's inconvenience is a factor given little weight in transfer from New Hampshire to Illinois).  The notion that a District Court should require Mr. Pugh to stand trial in Camden because federal agents live nearby, Opp'n Br. at 33, is ridiculous, enjoys no legal support and, in fact, is an insult to able FBI agents, who navigate the New Jersey Turnpike on a daily basis as part of their job.  *See, e.g.*, *United States v. Ferguson*,  432 F. Supp. 2d 559, 568 (E.D. Va. 2006) (In deciding Rule 21(b) motion, "[t]he United States of America has, for all practical purposes, unlimited financial resources to bring to bear… the Government can, and does, mint money").

<u>Third</u>, Mr. Pugh and his co-Defendants are the most important individuals when it comes to this trial, not the FBI agents, not the prosecutors, not the defense attorneys.  The government's argument loses sight of that at the start and never returns to that grounding principle.

## X.      CONCLUSION

For the foregoing reasons, the Court should dismiss the Counts as requested and/or grant all other requested relief.

Respectfully,

**BALDASSARE & MARA, LLC**

*Attorneys for Defendant Brian Pugh*

By: */s/ Michael A. Baldassare*
    Michael A. Baldassare

By:*/s/ Jennifer Mara*
    Jennifer Mara

By:*/s/ Charles Kennedy*
    Charles Kennedy

Dated:  June 26, 2020

-24-